**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

BOYD HESLOP,

                                        Petitioner,

              - v -                                        Civ. No. 9:08-CV-1105
                                                                (LEK/RFT)

DALE ARTUS, *Superintendent, Clinton Corr. Facility,*

                                        Respondent.

**APPEARANCES:**                        **OF COUNSEL:**

BOYD HESLOP
Petitioner, *Pro Se*
05-A-5064
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY 12929

HON. ERIC T. SCHNEIDERMAN              ALYSON J. GILL, ESQ.
New York State Attorney General        Assistant Attorney General
Attorney for Respondent
120 Broadway
New York, NY 10271

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

<u>**REPORT-RECOMMENDATION and ORDER**</u>

        Petitioner Boyd Heslop, acting *pro se*, commenced this action seeking *habeas corpus* relief,

pursuant to 28 U.S.C. § 2254, alleging that his present confinement in state custody is in violation

of his federal rights.  Heslop asserts the following grounds in support of his Petition: (1) there was

legally insufficient evidence to support his convictions, and, alternatively, his guilty verdict was

against the weight of the evidence; (2) the trial court erred in failing to charge Reckless

Manslaughter as a lesser-included offense of Depraved Indifference Murder; (3) he was deprived

due process by the trial court's denial of his request to call his mother and sister as defense witnesses and by the introduction of evidence of a prior false statement he made in a public assistance application; and (4) his sentence was excessive.  Dkt. No. 1, Pet.  For the reasons set forth below, this Court recommends that Heslop's Petition be **denied**.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

After a jury trial was conducted in the New York State Supreme Court, Columbia County, Petitioner Boyd Heslop was convicted of Murder in the Second Degree under N.Y. PENAL LAW § 125.25(4).  The following testimony was adduced at trial.

At some point in the morning of August 10, 2004, Petitioner's wife, Claribel Gonzalez, was awakened by her and Petitioner's four-month-old son's cries.  *See* Dkt. No. 9-6, State Court R. [hereinafter "R."], Trial Tr., at pp. 76-77.  She asked Petitioner what had happened, and he told her that the baby "slipped out of his hand [but] he grabbed him by the leg," and that the baby was fine and she should go back to sleep.  *Id.* at p. 77.  Gonzalez woke up again at approximately 8:00 A.M. and she saw Petitioner holding the baby, but that the baby's "leg was dangling on [Petitioner's] arm."  *Id.* at pp. 77-78.  Gonzalez asked Petitioner if the baby was breathing, and Petitioner responded, "why wouldn't the baby be breathing?"  *Id.* at p. 78.  Gonzalez "had the gut feeling that [the baby] wasn't alive at all," and she called the police.  *Id.*  The police arrived and took the baby to Columbia Memorial Hospital and then to Albany Medical Center, where the baby eventually died. *Id.*

Margaret Pino, a supervisor at Child Protective Services for Columbia County, interviewed Petitioner on August 10, 2004, at Albany Medical Center.  *Id.* at pp. 131 & 133-35.  Petitioner told her that he was attempting to give the baby a bath to quiet him, but that the baby slipped out of his

hands. *Id.* at p. 135. Petitioner said he grabbed the child by his feet, but the baby's right side of his head hit the floor. *Id.* at pp. 135-36. Petitioner stated that the child's head did not feel solid, but rather he could "feel and hear it move." *Id.* at p. 136.

In the morning of that same day, Detective James Delaney, Jr., of the Hudson City Police Department, interviewed Petitioner and Gonzalez at Albany Medical Center while investigating the nature of the injury to their child. *Id.* at pp. 140-43. Delaney took the Petitioner's statement, whereupon Plaintiff again claimed that the baby rolled out of his arms and hit his head on the floor. *Id.* at pp. 147-48; *see also* Dkt. No. 9-2, R., Pet.'s Appellant Br., Ex. A5, Pet.'s Statement, dated Aug. 10, 2004.

On August 11, 2004, Rensselaer County Medical Examiner Doctor Michael Sikirica performed an autopsy on the baby. *Id.* at pp. 265, 268, 272-73. Doctor Sikirica testified that the child died of multiple skull fractures and brain injuries due to blunt force trauma. *Id.* at pp. 282 & 285. Specifically, the baby suffered bilateral skull fractures on both sides of his head, which were caused by a severe amount of force and were most consistent with being struck by an object. *Id.* at p. 296. The baby also had swelling around the back of his left scalp, small red abrasions inside the right ear lobe and on the back of the left ear lobe, several small abrasions by his ears and neck, and the baby suffered significant bleeding and moderate swelling under his scalp. *Id.* at pp. 285, 287-88, 291 & 295. Doctor Sikirica opined that a child who suffers this injury may cry briefly, but "would lose consciousness very quickly," and that an infant who suffers from these injuries would experience swelling of the brain, "lead[ing] to respiratory failure and global dysfunction" and death. *Id.* at pp. 296-97. Finally, Doctor Sikirica testified that the child's injuries were "absolutely not consistent with any sort of fall," because that "very, very rarely [results in] a fracture" and injuries

would be located only on one side of the head, while the baby's injuries here were "bilateral injuries" on both sides of the head that included a depressed fracture with the bone pushed inward. *Id.* at pp. 292 & 300-01.

Later that day, Petitioner arrived at the City of Hudson police station looking for Gonzalez, who was being interviewed by Detective Delaney. *Id.* at pp. 172, 189, & 209-10. Delaney asked Petitioner if they could talk "because [Delaney had] some more questions for him," which Petitioner agreed to. *Id.* at p. 156. Delaney told Petitioner several times that he did not have to speak to Delaney, and that he could leave any time he wanted. *Id.* at p. 157. Petitioner initially repeated his claim that the baby fell out of his arms onto the floor, and that he might have scratched the baby on the neck when he tried to grab him to break his fall. *Id.* at p. 162. At this point, Delaney told Petitioner that the doctors said there were two skull fractures on the baby's head and that the injuries could not have happened in the way Petitioner described. *Id.* at pp. 162-63. Delaney told Petitioner that he "thought [Petitioner] inflicted the injuries and [Petitioner then] told [Delaney] that he did, that he struck the baby twice." *Id.* at p. 163. Petitioner told Delaney that at approximately 5:30 a.m. on August 10, 2004, Petitioner was awakened by his four-month-old son's cries, and because he was unable to quiet the baby over the next couple hours, Petitioner punched the infant in the head twice. *Id.* at pp. 161-64. Petitioner stated that he hit the child twice with his fist, but that he did not think he hit the baby that hard. *Id.* at pp. 163-64. Petitioner agreed to place his statement on videotape, and after having a cigarette outside, recorded his statement at approximately 5:10 p.m. *Id.* at pp. 165-66. Petitioner left the police station after recording his statement, and he was arrested about a half-hour later. *Id.* at pp. 167 & 216-17.

At trial, Petitioner introduced Doctor James Thalmann, a psychologist, who examined

Petitioner and reviewed his medical records. *Id.* at pp. 327-28 & 338-39. He testified that Petitioner had suffered a head injury when he was eight years old, which led to incidents of "aggressive behavior in certain circumstances where there[ are] stressors and frustration," hearing voices, recurrent headaches, and "blackout experiences." *Id.* at pp. 339-40 & 341-42. Depression, sleep deprivation, and marijuana use contribute to Petitioner's stressors, which could lead to "breakthrough behavior," or impulses that occur without the Petitioner being able to consciously assess the dangerousness or recklessness of the behavior. *Id.* at pp. 343-44. While Petitioner was "an average student" in school, Doctor Thalmann's testing placed him in the "borderline retardation range" with an overall I.Q. of 71. *Id.* at pp. 340 & 352. While Doctor Thalmann agreed that someone faced with a criminal charge such as Petitioner has a motive to present falsely on I.Q. testing, based on his observations, he did not believe that Petitioner was malingering. *Id.* at pp. 347-50 & 373-74.

In rebuttal, the prosecution introduced Doctor Robert Berger, a psychiatrist. *Id.* at p. 442. After his examination of Petitioner and Petitioner's records, personal, education, and work history, Doctor Berger concluded that Petitioner suffered from an adjustment disorder with mixed emotion features, that Petitioner's intellectual functioning was "within the borderline to at most dull average range," and that Petitioner possibly suffered from a learning disability. *Id.* at pp. 468-71 & 541. However, Doctor Berger opined that Petitioner did not suffer from "a mental, psychiatric, or neuropsychiatric disability, illness, or disorder, which had or would have undermined or negated his ability to have appreciated that there existed a risk in his behavior [and] that the ultimate result that had occurred could have occurred[.]" *Id.* at p. 480. He disagreed with Doctor Thalmann's conclusion that Petitioner suffered from traumatic brain injury or lacked impulse control. *Id.* at pp.

484-85 & 501-02.

The prosecution also submitted the testimony of Carol Vantassell, who worked in the employment unit of the Department of Social Services. *Id.* at pp. 425-27. She testified that she filled out an employment assessment with Petitioner on June 1, 2004, whereupon Petitioner claimed he had a high school diploma from Jamaica and that he had been employed at some point, but was currently without employment. *Id.* at pp. 429 & 433. Petitioner's statement on his employment assessment conflicted with Petitioner's wife Gonzalez's uncontroverted testimony that since at least the spring of 2004 to August 2004, Petitioner was working as a dishwasher at Mexican Radio. *Id.* at p. 75.

On July 25, 2005, the jury found Petitioner guilty of Murder in the Second Degree. *Id.* at p. 765. On September 26, 2005, the court sentenced Petitioner to an indeterminate prison term of twenty-five years to life. Dkt. No. 9-7, R., Sentencing Hr'g Tr., dated September 26, 2005, at pp. 16-17.

Petitioner appealed the conviction to the New York State Supreme Court Appellate Division, Third Judicial Department, raising the same claims as those repeated in his instant *Habeas Corpus* Petition.[1] On December 20, 2007, the Appellate Division affirmed the judgment of the trial court. *People v. Heslop*, 849 N.Y.S.2d 301 (N.Y. App. Div., 3rd Dep't 2007). Petitioner's application for leave to appeal to the New York State Court of Appeals was denied on June 2, 2008. *See People v. Heslop*, 892 N.E.2d 408 (N.Y. 2008). On October 16, 2008, Heslop filed the instant *Habeas Corpus* Petition, pursuant to 28 U.S.C. § 2254. Respondent concedes that Heslop's Petition is

---

[1] In fact, this Court notes that Plaintiff's supporting facts and statement of claims attached to his Petition are simply a photocopy of the brief he and his counsel, Mitchell Kessler, Esq., submitted to the Appellate Division. *Compare* Pet. *with* Dkt. No. 9-2, R., Pet'r Appellate Br.

timely.  Dkt. No. 7, Resp't Mem. of Law, at p. 17.

## II. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may not grant *habeas* relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application, of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006).

The petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234679, at *3 (S.D.N.Y. Aug. 28, 2003); *see also Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law.").  The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001) (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may

grant habeas relief:  1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled?  2) If so, was the state court's decision "contrary to" that established Supreme Court precedent?  3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams and Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

### B. Petitioner's Claim that the Conviction Was Not Supported by Legally Insufficient Evidence, or, Alternatively, Was Against the Weight of the Evidence

Petitioner claims that the evidence expounded against him at trial was legally insufficient to support a conviction of depraved indifference murder.  *See* Pet. at pp. 15 of attachment. Specifically, Petitioner asserts that there was no evidence at trial sufficient to establish that he "fully appreciated the risk presented by his conduct."  *Id.*

The Appellate Division rejected this claim when Heslop presented it on direct appeal, finding that

[c]ompelling evidence demostrated that [Petitioner] knew – after he hit the baby – that he had been severely injured, but nevertheless induced his wife to go back to sleep and left the child to die.  Such circumstances clearly present a situation upon which a jury could find that defendant acted with the requisite depravity.  "Given the level of force required to inflict these fatal injuries and defendant's attempt to cover up his conduct, the jury reasonably could have concluded that defendant was aware of an obvious risk of death" to the baby and that his actions "presented a grave risk of death and evinced a depraved indifference to the infant's plight."

*People v. Heslop*, 849 N.Y.S.2d at 304 (citing, *inter alia*, *People v. Maddox*, 818 N.Y.S.2d 664 (N.Y. App. Div., 3rd Dep't 2006)).

Pursuant to the AEDPA, we must now determine whether that conclusion constituted an unreasonable application of established federal law.

A petitioner who challenges a conviction on the sufficiency of the evidence bears a "very heavy burden." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (citation omitted).  The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against

-8-

conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he is charged. *See Fiore v. White*, 531 U.S. 225, 228-29 (2001); *Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979). This inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original). A *habeas* petitioner claiming that there was insufficient evidence to support a conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 324; *see also Schlup v. Delo*, 513 U.S. 298, 323 n.38 (1995). A federal *habeas* court must look to state law to determine the elements of a crime when considering a challenge based upon the sufficiency of evidence. *See Jackson v. Virginia*, 443 U.S. at 324; *Ponnapula v. Spitzer*, 297 F.3d at 179. The reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson v. Virginia*, 443 U.S. at 319.[2] Additionally, "when reviewing the sufficiency of the evidence, [the court] defers to the jury's assessment of witness credibility and the jury's resolution of conflicting testimony." *Parisi v. Burge*, 2007 WL 496463, at *1 (N.D.N.Y. Feb. 12, 2007) (internal quotation marks and citation omitted); *see also Harris v. Allard*, 2002 WL 31780176, at *2 (S.D.N.Y. Dec. 11, 2002).

Under New York law, a person is guilty of Murder in the Second Degree when, "[u]nder circumstances evincing a depraved indifference to human life, and being eighteen years old or more the defendant recklessly engages in conduct which creates a grave risk of serious physical injury or

---

[2] The *Jackson* standard is clearly established federal law as determined by the Supreme Court. *See Huber v. Schriver*, 140 F. Supp. 2d 265, 276 n.5 (E.D.N.Y. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 114 (2d Cir. 2000)) (other citation omitted); *see also Santana v. Kuhlmann*, 232 F. Supp. 2d 154, 166-67 (S.D.N.Y. 2002).

death to another person less than eleven years old and thereby causes the death of such person[.]"
N.Y. PENAL LAW § 125.25(4).[3]  The evidence presented at trial, when viewed in a light most
favorable to the prosecution, established that Petitioner punched his six-week-old infant twice in the
head with severe enough force to cause multiple skull fractures.  Further, as the Appellate Division
stated, there was evidence that Petitioner knew that he had severely injured the child.  He told
Margaret Pino, of Child Protective Services for Columbia County, that he could feel the child's head
"was not solid.  He could feel and hear it move." Dkt. No. 9-7, R., Trial Tr., at p. 136.  He also told
his wife that the baby had fallen but that Petitioner had caught him and he was fine, which was a lie
and cost the infant several hours of medical help, as Petitioner placed his baby back in his bassinet
and went back to sleep after striking the child in the head twice.  *Id.* at pp. 77 & 164.

Based on this evidence, it was rational for the jury to conclude that Petitioner acted "[u]nder
circumstances evincing a depraved indifference to human life," and that Petitioner "recklessly
engage[d] in conduct which create[d] a grave risk of serious physical injury or death to another
person less than eleven years old," in violation of New York Penal Law § 125.25(4).  Therefore, we
find that the Appellate Division's rejection of Petitioner's insufficient evidence claim was not an
unreasonable application of federal law, and we recommend that this claim be **denied**.

Petitioner further contends that to the extent this Court rejects his claim that the conviction
was not supported with legally sufficient evidence, the jury's verdict was nonetheless against the
weight of the evidence.  Pet. at p. 15 of attachment.  The Appellate Division also addressed and
rejected this claim, finding that "[a]fter weighing the evidence presented, including the conflicting

---

[3] This subsection of Murder in the Second Degree, along with N.Y. PENAL LAW § 125.25(2), is commonly
known as "depraved indifference murder." *See*, *e.g.*, *Robinson v. Burge*, 2005 WL 928632, at * 3 (N.D.N.Y. Apr. 6,
2005).

expert opinions, we find ample support for the jury's decision to discredit that evidence which supported [Petitioner]'s psychiatric defense." *People v. Heslop*, 849 N.Y.S.2d at 304 (internal citations omitted).  Nonetheless, Petitioner's claim that the verdict was against the weight of the evidence is not cognizable on federal *habeas* review.

"[A] challenge to a verdict based on the weight of the evidence is different from one based on the sufficiency of the evidence.  Specifically, the 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles." *Garbez v. Greiner*, 2002 WL 1760960, at *8 (S.D.N.Y. July 30, 2002) (citation omitted).  It is well established that *habeas corpus* review is not available for errors of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67-69 (1991).  As such, no cognizable federal issue is presented by a *habeas* claim challenging the weight of the evidence adduced at trial.  *Cardena v. Giambruno*, 2004 WL 239722, at *4 (S.D.N.Y. Feb. 10, 2004); *Glisson v. Mantello*, 287 F. Supp. 2d 414, 441 (S.D.N.Y. 2003) (citing *Givens v. Burge*, 2003 WL 1563775, at *10 (S.D.N.Y. Mar. 4, 2003) (collecting cases)); *McBride v. Senkowski*, 2002 WL 523275, at *4 n.2 (S.D.N.Y. Apr. 8, 2002) (citing *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996)).  Thus, Petitioner does not assert a federal claim as required by 28 U.S.C. § 2254(a). *Camacho v. McKinney*, 2004 WL 1490308, at *1 (S.D.N.Y. July 1, 2004) ("[P]etitioner's first ground . . . arguing only that the verdict was against the weight of the evidence – [] raises no claim cognizable in a federal habeas corpus proceeding."); *Brown v. Fischer*, 2004 WL 1171277, at *6 (S.D.N.Y. May 27, 2004) ("It is well-settled that a weight of the evidence claim is not cognizable on federal habeas review.") (citations omitted).  Petitioner's weight of the evidence claim must therefore be **denied**.

### C. Lesser Included Offense

Petitioner argues that the trial court violated his due process rights when it failed to charge Reckless Manslaughter, *see* Manslaughter in the Second Degree, N.Y. PENAL LAW § 125.15, as a lesser included offense of the depraved indifference murder of a child subsection of Second Degree Murder, *see* N.Y. PENAL LAW § 125.25(4).  *See* Pet. at p. 32 of attachment.  The Appellate Division rejected this argument on Petitioner's direct appeal, first noting that

> A defendant is entitled to a lesser included offense charge where he or she can "establish that it is impossible to commit the greater crime without concomitantly committing the lesser offense by the same conduct" and that there is "a reasonable view of the evidence to support a finding that the defendant committed the lesser offense but not the greater."

*People v. Heslop*, 849 N.Y.S.2d at 304 (internal citations omitted).  The Appellate Division then examined the difference between depraved indifference murder as defined in N.Y. PENAL LAW § 125.25(2), to which manslaughter in the second degree has been definitively established as a lesser included offense, *see*, *e.g.*, *People v. Atkinson*, 853 N.E.2d 227, 228 (N.Y. 2006), and depraved indifference murder of a child as defined in N.Y. PENAL LAW § 125.25(4).  Finding that "subsection 4 sets forth 'a reduced intent requirement' to specifically address the crime of child abuse," the Appellate Division stated that while Manslaughter in the Second Degree requires a person to "recklessly cause[] the death of another person," the "risk guarded against under Penal Law § 125.25(4) *is not limited to risk of death*[,]" but instead encompasses the risk of "serious physical injury." *People v. Heslop*, 849 N.Y.S.2d at 305-06 (emphasis in original).  Therefore, because one can engage in conduct that creates and disregards a grave risk of serious physical injury, which then causes death, without engaging in conduct that creates and disregards a substantial risk of death, which then results in death, the County Court did not err in refusing to charge Manslaughter in the

*-12-*

Second Degree as a lesser included offense. *See id.* at 306 (noting examples where Penal Law § 125.25(4) would apply, due to the "lower threshold of intent for crimes against children under 11," but where Penal Law § 125.15 would not); *but see id.* at 307-08 (Peters, J., dissenting) ("In my opinion, the risk-creating conduct required for manslaughter in the second degree is *always* satisfied by the commission of depraved indifference murder.") (emphasis in original).

In any event, Petitioner's claim is not cognizable on federal *habeas* review. While the Supreme Court has held that, in capital punishment cases, due process requires that the jury be instructed on any lesser included offenses when warranted, it has not determined whether the Constitution requires that a lesser included offense be included in a jury charge in a non-capital case. *Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980) (declining to "decide whether the Due Process Clause would require the giving of such instruction in a noncapital case"). In *Jones v. Hoffman*, 86 F.3d 46, 48 (2d Cir. 1996), the Second Circuit denied a *habeas* petitioner's claim that the lesser included offense should have been included in the jury charge because "a decision interpreting the Constitution to require the submission of instructions on lesser-included offenses in non-capital cases would involve the announcement of a new rule," which the Supreme Court expressly disallowed in *Teague v. Lane*, 489 U.S. 288, 316 (1989) (establishing the "non-retroactivity" rule that *habeas corpus* "cannot be used as a vehicle to create new constitutional rules of criminal procedure unless those rules would be applied retroactively to *all* defendants on collateral review") (emphasis in original).[4]

Therefore, a claim based on the alleged error of the county court to charge a lesser included offense is not cognizable on *habeas* review, absent a new constitutional rule stating as such. With

---

[4] The non-retroactivity rule announced in *Teague v. Lane* was later codified by the AEDPA in 42 U.S.C. § 2254(d)(1). *See Williams v. Taylor*, 529 U.S. 362, 379 (2000).

no basis to find an unreasonable application or a violation of clearly established federal law, Petitioner's claim should be **denied**.

### D. Petitioner's Claim of Due Process Trial Errors

Petitioner claims that the trial court erred in precluding his mother and sister from testifying in support of his mental impairment defense which stemmed upon a childhood head injury he suffered, that the trial court erred by failing to exclude evidence that he had made a false statement on an application for social services benefits, and that both of these errors deprived Petitioner of his right to a fair trial. *See* Pet. at p. 29 of attachment.

On Petitioner's direct appeal, the Appellate Division held that the trial court's decision to preclude Petitioner's mother and sister from testifying about his mental impairments was not in error, as "the decision to admit such testimony falls within the broad discretion of the trial court and here we find no abuse of that discretion." *People v. Heslop*, 849 N.Y.S.2d at 306 (citing, *inter alia*, *People v. Almonor*, 715 N.E.2d 1054 (N.Y. 1999)). The Appellate Division added that, in light of the expert testimony proffered by Heslop, any "proposed testimony of lay witnesses on the subject would have been redundant, serving merely to 'buttress the testimony of the expert witness[].'" *Id.* at 307 (citing *People v. Boomer*, 632 N.Y.S.2d 309, 312 (N.Y. App. Div., 3d Dep't 1995)). Further, addressing Petitioner's complaint of the admission of evidence indicating that he made a false statement on his application for social services benefits a few months before the instant incident at hand, the Appellate Division determined that, "[b]y claiming that he was unable to discern the nature and consequences of his actions by reason of mental defect, [Petitioner] opened the door to the presentation of evidence of certain prior uncharged criminal or immoral conduct that tended to disprove the mental deficiency claim[.]" *Id.* (finding that the county court "appropriately found that

*-14-*

the probative value of the evidence . . . outweighed any potential prejudice to [Petitioner].")
Pursuant to the AEDPA, this Court must now determine whether these conclusions constituted an
unreasonable application of established federal law.

The Appellate Division's decisions that the county court appropriately precluded Petitioner's
mother and sister from testifying about his mental impairments as redundant and allowed evidence
of Petitioner's prior false statement were not unreasonable applications of federal law.   The
Constitution requires that criminal defendants be given "a meaningful opportunity to present a
complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).  Trial judges have considerable
discretion in making evidentiary determinations, and absent a serious abuse of that discretion,
deference to the trial judge's decision is due. *See Jacobson v. Henderson*, 765 F.2d 12, 15-16 (2d
Cir. 1985) (upholding on *habeas* review trial judge's ruling excluding evidence on grounds that it
was collateral and extrinsic); *see also Harris v. Woods*, 2006 WL 1140888, at *39 (S.D.N.Y. May
1, 2006) (noting that the New York State "trial court[ has] broad discretion to determine the
relevancy and admissibility of evidence").  Our *habeas* review is limited to violations of federal law,
where relief is only available "where the petitioner 'can show that the error[s] deprived [him] of a
*fundamentally fair* trial.'" *Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) (quoting *Rosario v.
Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988)) (emphasis in original).  Because Petitioner has failed
to meet that burden in his claim regarding the exclusion of the testimony of his mother and sister in
support of his defense of a mental impairment, already established through the expert testimony of
Doctor Thalmann, and his claim regarding the trial court's allowance of evidence of his false
statement when applying for public assistance benefits, which indicated that he "had the cognitive
ability to undertake an act of deception to achieve a desirable result," *see People v. Heslop*, 849

-15-

N.Y.S.2d at 307, we find that the Appellate Division's rejection of Petitioner's claims was not an unreasonable application of federal, and we recommend the claims be **denied**.

### E. Petitioner's Claim that his Sentence was Harsh and Excessive

Lastly, Petitioner claims that his sentence of twenty-five years to life imprisonment he received is harsh and excessive. *See* Pet. at p. 36 of attachment. However, an excessive sentence claim presents no federal constitutional issue cognizable on *habeas* review when a petitioner's sentence is within the statutory range of the corresponding crime he was convicted of. *See White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."); *see also Garrett v. Smith*, 2006 WL 2265094, at *12 (E.D.N.Y. Aug. 8, 2006) ("It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law.") (quoting *White*). In New York, a conviction of Murder in the Second Degree, which is classified as a class A-1 felony, can range from a determinate prison sentence of between fifteen years to life imprisonment, or twenty-five years to life. N.Y. PENAL LAW §§ 125.25, 70.00(2)(a) & (3)(a)(i). Petitioner's prison sentence of twenty-five years to life imprisonment is within the range prescribed by New York State law. Thus, Petitioner's excessive sentence claim is not cognizable on *habeas* review and should be **denied**.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition for a Writ of *Habeas Corpus* (Dkt. No. 1) be **DENIED**; and it is further

**RECOMMENDED**, that because the Court finds Petitioner has not made a "substantial

showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should be issued with respect to any of Petitioner's claims. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000), *cert. denied* 531 U.S. 873 (2000); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   March 22, 2012
        Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge